EDWIN W. MOISE, receiver, plaintiff in error, vs. BRADFORD T. CHAPMAN, defendant in error.

[1.] The appointment of a receiver " does not at all affect the right."

[2.] By the fifteenth section of the Act of 1832, "to secure the solvency of all the banking institutions in this State," the paper discounted and held by a bank, is payable in the bills of the bank.

Complaint, from Muscogee. Tried before Judge WORRILL, November Term, 1857.

The Manufacturers and Mechanics Bank of Columbus having failed, Edwin W. Moise was appointed receiver, and among the papers and assets of the bank, found the following draft:

" $1,000.          COLUMBUS, April 1st, 1856.

Forty-five days after date pay to my own order, one thousand dollars, at the office of Messrs. Lockett & Snelling, in Savannah, for value received.

[Signed]          A. W. CHAPMAN.
To Mr. B. T. Chapman, Sav., Ga."

[Written across the face,] " Accepted, B. T. CHAPMAN."

Moise sued Chapman on his acceptance ; Chapman pleaded as a set-off the bills of the bank, which he had: some when the bank broke, some before suit, and some after suit brought.

Moise vs. Chapman.

The case was submitted on the following agreed statement of facts:

That plaintiff is the receiver of the Manufacturers and Mechanics Bank, appointed by the Chancellor, under a creditor bill; that said bank, at the time it stopped payment, was the owner of and held the paper sued on; and that the same was at that time over due, and came into plaintiff's possession as receiver; that defendant, at and before trial, had the bills of the bank of which he is owner to an amount equal to the amount due on the draft sued on; two hundred dollars of the bills he had when the bank stopped payment, another hundred he got before suit, and the balance were obtained after suit, and all of which were pleaded as a tender and set-off, and were actually tendered in Court on the trial, but no tender was made before suit brought. That the bills bought since the commencement of the suit cost the defendant ten cents on the dollar.

It is further admitted, that of the bills last purchased, defendant had one hundred dollars, for which he agreed to give fifty cents in the dollar, if he could use them in payment in this case, otherwise he was to pay nothing for them. The draft was discounted at the Manufacturers and Mechanics Bank. The bank stopped payment Saturday, Nov. 2, 1856, and plaintiff was appointed receiver on the Monday following.

The Judge charged the jury, that upon the facts agreed upon, the plaintiff could only recover cost, defendant being entitled by the Act of 1832, to pay his draft in the bills of the bank; the jury found accordingly, and plaintiff excepted.

Moses & Moise; and Dougherty, for plaintiff in error.

B. Hill; and Thornton, *contra.*

*By the Court.*—Benning, J. delivering the opinion.

The Court below told the jury, that the defendant was "entitled, by the Act of 1832, to pay his draft in the bills of the bank." Was the Court right in telling them this?

Moise vs. Chapman.

Counsel for the plaintiff in error, say no.

They say, first, that even if the defendant would be entitled to pay the draft, in the bills of the bank, to the *bank itself*, he is not entitled to do this, to the *receiver*.

[1.] But Lord Hardwick, in *Skip vs. Howard*, says, that the appointment of a receiver, "does not all affect the right." *Stor. Eq. Jur.*, § 831.

And so great an authority as Lord Hardwick, may be safely followed in a statement so reasonable.

It follows then that any defence which might have been made by the defendant, against the bank, may be made by him, against the receiver.

They say, secondly, that the defendant would not have the right to pay this draft, in the bills of the bank, even to the bank itself.

[2.] The fifteenth section of the Act of 1832 " to secure the solvency of all the banking institutions in this State," is in the following words: " The notes and bonds hereafter made payable at and discounted by any bank, shall, when transferred to any other bank, continue payable in the bills of the bank at which they were so made payable and discounted, in the same maner and on the same principles as if they were still holden by the bank, at which they were made payable and by which they were discounted. *Provided*, That nothing herein contained shall be construed to take away from any bank, any rights which are secured to it by the provisions of its charter. *Cobb*, 101.

If what is implied in all these words, except the proviso, were expressed, the words would be as follows: Whereas, by the law as it stands at present, *all of the paper* discounted by a bank, is, whilst held by the bank itself, payable in its own bills, and none of such paper, is, when transferred to others, payable in those bills; therefore, by the law, as it shall hereafter be, *some* of such paper, shall, when transferred, if transferred to a *bank*, still be, ("continue,") payable in those bills; viz: the part of such paper which consists of

"*notes and bonds made payable at*" *such bank.* The aim was, to alter the old law, to some extent, so far only as banks were concerned, and to put them, when transferrees of certain kinds of paper from one of themselves, on a footing worse than that of other transferees; viz: on a footing no better than that of the transferring bank itself, which would have to receive its own bills, in payment of such paper.

The section, then, contains a legislative declaration, that all the paper of a bank, whilst held by the bank itself, is subject to be paid in the bills of the bank. Such a declaration is itself, a law.

And what objection can there be, to the law? When a bank solicits and obtains the privilege of passing to others, its bills as money, it, by the strongest implication, undertakes, that it will receive from others, its bills as money.

We think, that the charge was right.

Judgment affirmed.